IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM D. BROWN,<br>            Plaintiff,<br>   v.<br><br>Blue Island Police Officer F. NAVARRO (Star #163), Blue Island Police Officer J. MURRAY, Blue Island Police Officer DELGADILLO, Blue Island Police Officer K. SISK, and CITY OF BLUE ISLAND, ILLINOIS,<br>            Defendants. | Case No. 09 C 3814<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Brown ("Brown") sued four individual police officers of the City of Blue Island (the "City") pursuant to 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights to be free from false arrest, excessive force, and other officers' failure to intervene, as well as malicious prosecution pursuant to Illinois state law. Brown also sued the City for indemnification pursuant to Illinois state law. The four officers (together, the "Individual Defendants") and the City move jointly for summary judgment on Counts I through IV. For the reasons stated herein, summary judgment is granted in part and denied in part. Brown also moves to bar the testimony of Defendants' expert on police procedures, which is granted.

**I. Undisputed Material Facts**

The following facts are undisputed.[1] On June 24, 2007, between 9 p.m. and 11 p.m., Brown and his brother, Quincy Brown ("Quincy") were driven by a friend to the White Castle drive thru at 127th and Western Avenue in Blue Island (the "White Castle"). (Pl. 56.1 Resp.¶7; Pl. Add'l 56.1 ¶1.) Quincy placed his order through the drive-thru intercom, and became upset with what he perceived as the White Castle employee's unprofessional response. (Pl. 56.1 Resp. ¶8). Without receiving the order, Quincy went into the White Castle after his friend parked the car. (Pl. 56.1 Resp. ¶9). Brown followed his brother into the White Castle 3 to 7 minutes later to tell his brother "let's go." (Pl. 56.1 Resp. ¶ 10; Pl. Add'l 56.1 ¶5.).

Four to eight minutes later, Officers Navarro and Murray, two Blue Island Police officers, arrived at the White Castle. (Pl. 56.1 Resp. ¶ 11; Pl. Add'l 56.1 ¶ 6). Defendant Officer Murray (white) and Defendant Officer Navarro (Hispanic) each testified that he responded to a call from the dispatcher to go to the White Castle for a disturbance. (Pl. 56.1 Resp. ¶12, 13). Defendant Officer Delgadillo was dispatched to the White Castle also (Pl. 56.1 Resp. ¶14). Defendant Officers Navarro, Murray, and Delgadillo are together referred to as the "Arresting Officers."

The substance of the conversation between Officers Murray and Navarro, on the one hand, and Brown and Quincy, on the other hand, while in the White Castle, are in dispute. The content of any conversation, and even the occurrence of a conversation, with a White Castle employee

---

[1] Citations to Plaintiff's Response to Defendants' Statement of Material Facts, Local Rule 56.1(b)(3) have been abbreviated to "Pl. 56.1 Resp. ¶ __." Citations to Plaintiff's Statement, Pursuant to Local Rule 56.1(b)(3)©, of Additional Material Facts, in Response to Defendants' Motion for Summary Judgment, has been abbreviated to "Pl. Add'l 56.1 ¶ __."

regarding Brown's and/or Quincy's behavior, is also in dispute. One of the officers asked Brown his ID while they were in the restaurant, and Brown gave it to him. (Pl. Add'l 56.1 ¶9). The Arresting Officers, Brown and Quincy left the restaurant together and stood outside the restaurant door. (Pl. Add'l 56.1 ¶10).

While outside, Quincy was placed under arrest. (Quincy Dep at 53, Pl. Add'l 56.1 ¶17). Officer Delgadillo arrested and handcuffed Quincy, and then stayed with Quincy during the entirety of the verbal exchange and subsequent arrest of Brown. (Delgadillo Dep. at 29-30) (Quincy Dep at 64., 69,72) (Navarro Dep. At 120, 137). The record is not clear as to how far apart Quincy and Delgadillo stood from Brown and Murray. (Pl. 56.1 Resp. ¶22). Officer Navarro directed Brown to leave the scene, while Officer Murray still held Brown's identification and told Brown to stay. (Pl. Add'l 56.1 ¶13, Quincy Dep at 60, 63). Brown repeatedly requested the return of his ID; after one of the officers returned the ID to Brown, Brown proceeded to leave as directed. (Pl. Add'l 56.1 ¶¶15, 20). Officer Navarro told Brown to come back. (Pl. Add'l 56.1 ¶20). Officer Navarro directed Officer Murray to arrest Brown. (Pl. 56.1 Resp. ¶34, Pl. Add'l 56.1 ¶21). The details of the manner in which Officer Murray handled and/or handcuffed Brown, and Brown's degree of resistance, if any, are all firmly contested issues. At some point during the arrest, Officer Navarro used a taser on Brown. (Quincy Dep. at 65-66; Murray Dep. at 85-86). Officer Murray was immediately next to Brown (indeed, securing Brown's left hand, possibly with handcuffs) when Officer Navarro approached Brown and tasered him. (Navarro Dep. At 144-45, 149-50). The only undisputed movement by Brown is a single hand-raise with his right hand to approximately shoulder height after Officer Navarro pulled out his taser and before he used it. (Pl. Dep. at 61.)

3

Brown fell to the ground following the use of the taser (Navarro Dep. At 149-50; Quincy Dep. At 64, 72). Officers Murray and Delgadillo did not intervene to stop the taser use or to break Brown's fall. (Pl. Add'l 56.1 ¶27). Brown's ankle fractured during the arrest and he had two surgeries to correct it. (Pl. Add'l 56.1 ¶¶34-36).

Later that evening, Officer Navarro and Officer Murray prepared the charging documents for obstruction of a police officer. (Pl. 56.1 Resp. ¶¶ 43, 44). Officer Sisk, who was not present at the time of Brown's arrest, approved charging Brown. (Pl. Add'l 56.1 ¶32.-33, Pl. 56.1 Resp. ¶44). Brown was charged with two counts of obstructing a peace officer, one of which was subsequently changed to resisting arrest. (Pl. Add'l 56.1 ¶¶30, 31).

**II. Standard of Review**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Ezell v. Potter*, 400 F.3d 1041, 1042 (7th Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). "Summary judgment is properly denied where an issue of material fact can be resolved only after a determination of the credibility of witnesses, upon observing their demeanor; and where the evidence in support of the

4

motion does not establish the *absence* of a genuine issue of material facts, even if *no* evidence opposing the motion has been presented." *Spreen v. Brey*, 961 F.2d 109, 111 (7th Cir. 1992).

Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate statement requires a citation to specific support in the record. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). A party's statement of facts is not a vehicle for factual or legal arguments. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009) (holding that where "much of [the party's] factual submission was argumentative" it was appropriate to strike it); *Judson Atkinson Candies v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."). Legal arguments are the province of the supporting memorandum of law provided for by Rule 56.1(b)(2). Furthermore, the statement of facts must be concise, containing only one or two factual propositions per paragraph. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("The numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (quoting *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000)).

In cases in which the moving party fails to file anything controverting the non-movant's statement of additional material facts, the non-movant's additional material facts, to the extent they

are adequately supported by the record, shall be deemed admitted. *See* L.R. 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(c) will be deemed admitted unless controverted by the statement of the moving party.")

### III. Discussion

Defendants' Statement of Material Facts contains numerous statements that are compounded statements of multiple facts. Likewise, several of the statement are unsupported by the record to which they cite (or lack any citation whatsoever). Additionally, Defendants, as movants, failed to file any response to Plaintiff's Statement of Additional Material Facts; by local rule, these additional facts are deemed admitted for purposes of reviewing the Motion for Summary Judgment. L.R. 56.1(a); *see Ammons v. Aramark*, 368 F.3d 809, 817 (7th Cir. 2004) (upholding district court's right to "require strict compliance" with Local Rule 56.1). Viewing the facts in light most favorable to the non-movant Brown, and lacking any response to Brown's facts by Defendants, there exist numerous material facts in dispute that merit denial of Defendants' Motion for Summary Judgment as to most counts. With respect to Officer Sisk, however, Brown has not provided evidence of one or more elements of the claims necessary to prevail at trial, and summary judgment is granted as to Officer Sisk.

#### A. False Arrest (Officers Navarro, Murray, Delgadillo, Sisk)

Brown has accused each of the Individual Defendants of violating of his Fourth Amendment right not to be arrested without probable cause. In order to survive summary judgment on a 1983 claim for false arrest, Brown must raise a genuine issue regarding whether the Arresting Officers had probable cause to arrest him. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir.

6

2009) (citing *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). On the evening in question, one or more of the Individual Defendants arrested Brown and charged him with two counts of obstructing a peace officer.[2] In Illinois, obstructing a peace officer involves the commission of "a physical act of resistance or obstruction. . . that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest." *Brooks v. City of Aurora*, 653 F.3d 478, 484 (7th Cir. 2011). "Whether probable cause exists at the time of an arrest depends on whether 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit a crime." *Id*. Resisting even an unlawful arrest by a known police officer violates resisting a peace officer under Illinois law. *Id*. (citing Illinois state precedent). "The jury must determine the existence of probable cause 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) *(quoting Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013-14 (7th Cir. 2006)).

In this case, there are material facts in dispute that are relevant to the determination of whether the Defendants had probable cause to arrest Brown. The parties dispute: (I) the statements and actions of the Arresting Officers leading up to and during the arrest; (ii) Brown's physical responses to the Arresting Officers' questions as well as to their treatment of Brown's

---

[2] Brown refers to the fact that, at some point following the arrest, one of the charges appears to have been changed from obstructing a police officer to resisting arrest. Because the probable cause inquiry on a false arrest claim is determined at time of the arrest, not at time of the charge, this opinion addresses the officers' conduct vis-a-vis arrest for obstruction. *See Brooks v. City of Aurora, Illinois,*, 653 F.3d 478,485 (7th Cir. 2011) ("[I]f an officer has probable cause to arrest a suspect for any crime, there is no Fourth Amendment violation even if the officer lacked probable cause with respect to the actual offense charged") (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)).

brother Quincy; and (iii) Brown's conduct and demeanor leading up to the handcuffing of Brown, all of which are relevant to the determination of whether a reasonable officer would have believed he had probable cause to arrest Brown. For obstructing officers or resisting arrest, "[i]t is well settled under Illinois law . . . that the resistence must be physical; mere argument will not suffice." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003). Brown did not refuse to leave the White Castle parking lot without justification (as, according to Brown, one officer told Brown to leave, while another officer, holding Brown's ID at the time, told him to stay), he did not disobey any order to "stand back" made by any Arresting Officer, he made no movement whatsoever toward his brother Quincy during Quincy's arrest, and he in no way resisted, struggled, or pulled away from any Arresting Officer, including when Officer Murray placed Brown into handcuffs and when Officer Navarro threatened to use, and then used, his Taser. (Pl. Add'l 56.1 ¶13, ¶18, ¶19, ¶22-23). Taking the facts in the light most favorable to Brown, as the Court is required to do at summary judgment, there exists a genuine issue as to whether a reasonably prudent person would have believed that Brown was resisting the arrest.

Defendants rest their defense in part on their disputed version of these facts (i.e. the Arresting Officers told Brown to leave and he refused to do so, and that he made movements toward Quincy upon Quincy's arrest), and in part on the fact that Brown admitted that he raised his right hand, with bent elbow and hand near his shoulder, following Officer Navarro's statement that he would taser Brown. Defendants argue that *Brooks* affords them a complete defense because disputed issues of fact over actual resistance do not preclude summary judgment on grounds of the reasonable belief of an officer. *Brooks*, 653 F.3d at 484. Defendants place more

reliance on *Brooks* than the facts of this suit permit. In *Brooks*, undisputed videotape evidence showed the plaintiff repeatedly resisted attempts to grab him and physically backed away from the officer in an evasive manner, finally throwing his hands forward. *Id.* Here, in contrast, the only undisputed fact surrounding Brown's physical conduct prior to and during the arrest is Brown's single hand-raise to near his shoulder. This single act alone cannot sustain a grant of summary judgment in Defendants' favor. Brown's demeanor, words, and actions prior to the hand-raise, and the degree to which Officer Murray had him otherwise secured, are all issues of fact that are in dispute and need to be evaluated by a jury in order to determine whether the Arresting Officers could have had an "objectively reasonable" belief that Brown was attempting to physically "withstand the force or effect" of the Arresting Officers' attempts to arrest him.

With these material facts in dispute, summary judgment must be denied as to the Arresting Officers, all of whom interacted with Brown during the minutes prior to Brown's arrest. With respect to Officer Sisk, however, there are not sufficient facts in the record to permit Brown to prevail at trial. Officer Sisk was the supervising officer on the evening of Brown's arrest and he made the ultimate determination that charges should be filed against Brown, but there is no dispute that Officer Sisk was not present at the time of Brown's arrest, and Brown presents no evidence that Officer Sisk had any information other than the Arresting Officers' report. Sisk "can only be liable for what he did; there is no doctrine of supervisory liability for the errors of subordinates" such as the Arresting Officers. *Paine v. Cason*, – F.3d –, 2012 WL 1434961 at *8 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Applying the proper standard of an officer's reasonable belief of probable cause to arrest, Officer Sisk, having reviewed Officer

9

Navarro's report of the incident, had probable cause to sign-off on the filing of the charges against Brown. Therefore, as to Count I of the Complaint, summary judgment is granted as to Officer Sisk, and denied as to Officers Navarro, Murray and Delgadillo.

### B. *Excessive Force (Navarro)*

Excessive use of force claims, like false arrest claims, are evaluated under the Fourth Amendment standard of reasonableness. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Law enforcement is a difficult job, as 'police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (quoting *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009)). "Reasonableness" is judged from the perspective of a reasonable officer on the scene. *Sow*, 636 F.3d at 303. "The dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner." *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011). Factors to be considered include the need for the use of force, the relationship between the need for force and the amount used, the severity of the crime at issue, whether the arrestee posed an immediate threat to the safety of the officers or others, and whether the arrestee was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, *see also Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir 2000).

As with Brown's false arrest claim, genuine issues of material fact remain as to the reasonableness of Navarro's use of the taser on Brown, such that the excessive force claim must be decided by a jury. Taking all disputed facts in favor of Brown, Brown's only physical action

was to raise his right hand toward his shoulder upon being told that he would be tased, after he had voluntarily and peacefully submitted to arrest and already had his left hand cuffed behind his back. Brown had already started to followed instructions to leave the scene after Officer Murray returned his ID, and then came back to the Officers when told to do so. A reasonable jury could find that an officer could not have reasonably believed that the use of a taser on an already restrained individual - who had voluntarily submitted to restraint - was appropriate.

The cases cited by Defendants, in addition to being non-binding on this Court, only serve to highlight the fact that Brown's cause of action before this Court is replete with material facts that must be resolved by a jury. Unlike in *Brooks*, or in *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), there is no video or audio recording of the events in the White Castle parking lot. Viewing all disputed facts in the light most favorable to Brown, the record does not support Defendants' analogies to the *Draper* plaintiff as (according to Defendants' Motion) a "hostile, belligerent, and uncooperative" arrestee, an individual attempting to flee, or an arrestee who "repeatedly ignored police instructions and continued to act belligerently." Nor does the record support analogy to the plaintiff in *Brooks*, who was videotaped visibly backing away from officers and evading attempts to be taken into custody, while located in his own residential front yard with potentially sympathetic family and friends inside the house, should he have reached the front door. *See Brooks*, 653 F.3d at 487. Viewing these disputed facts in Brown's favor, Brown was not resisting arrest, was already handcuffed (or at least secured) with one hand, and raised the other hand only as far as his shoulder before he was stunned with a taser by Officer Navarro with enough force to send Brown to the ground. Whether a reasonably prudent person would have believed that the

circumstances merited such a degree of force depends on the factual events leading up to the use of the Taser, and the testimony and demeanor of the witnesses are all issues which must be resolved by a jury. Summary judgment on Count II of Brown's Complaint is denied.

### C. Failure to Intervene (Officers Murray and Delgadillo)

Defendants also move for summary judgment on Count III of Brown's Complaint, alleging failure to intervene. To succeed at trial on a claim of failure to intervene, Brown must show that Officers Murray and Delgadillo (1) had reason to know excessive force was being used and (2) had a realistic opportunity to prevent the harm from occurring. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 2004). With respect to Officer Murray, while the facts surrounding both the arrest of Brown and the use of the taser remain in dispute, it is undisputed that Officer Murray was immediately next to Brown (indeed, securing Brown's left hand, possibly with handcuffs) when Officer Navarro approached Brown and tasered him. Officer Murray, as the one holding Brown, would have known that Brown was not resisting arrest, and could have intervened.

With respect to Officer Delgadillo, while it is undisputed that Officer Delgadillo was not immediately beside Brown at the time of his arrest, it is disputed how far Delgadillo stood from Brown and whether he could have seen the Taser in Navarro's hand, and therefore whether he could have reasonably intervened. According to Quincy, Officer Navarro, and Officer Delgadillo, Officer Delgadillo had arrested Quincy and had Quincy in handcuffs at the entrance to a separate squad car when the Tasering of Brown took place. While it is disputed whether Officer Delgadillo was in a position to see Officer Navarro approach Brown with the taser, taking the facts in the light most favorable to Brown, a reasonably prudent person standing close to Brown, and with the

suspect in his charge under arrest, could have had a realistic opportunity to prevent the use of the Taser in these circumstances.

As it is undisputed that neither Officer Murray nor Officer Delgadillo intervened, summary judgment as both Defendants as to Count III is denied.

### *D. Malicious Prosecution (Officers Navarro, Murray, Delgadillo, Sisk; City of Blue Island)*

Finally, Defendants move for summary judgment as to Brown's pendant Illinois state law claims of malicious prosecution. To proceed with a claim for malicious prosecution under Illinois law, a plaintiff must establish "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011), (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Probable cause is a complete defense to a malicious prosecution claim. *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009). When evaluating a malicious prosecution claim, the pertinent time for making a determination as to probable cause is the time when the charging documents are filed, not the time of arrest. *Id.* (citing *Porter v. City of Chicago*, 912 N.E. 2d 1262, 1274 (Ill. 2009)).

As discussed above, material facts are in dispute as to whether Officers Navarro, Murray and Delgadillo had probable cause to arrest Brown. Officer Navarro and Officer Murray prepared the charging documents for obstruction shortly following the arrest, which documents listed themselves and Delgadillo as the arresting officers. Malicious prosecution liability extends to those persons who played a significant role in causing the prosecution of the plaintiff. *See Rodgers*

13

*v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348-49 (Ill. App. Ct. 2000). Defendants have made no arguments regarding any element of the claim of malicious prosecution other than asserting the complete defense of probable cause. Because this Court has already determined the issue of probable cause to arrest to be in dispute and therefore a matter for the jury, summary judgment as to the malicious prosecution claim against Officers Navarro, Murray and Delgadillo is denied, and these claims will proceed to trial.[3]

However, it is undisputed that Officer Sisk played no role in the arrest of Brown, and no role in the prosecution of Brown other than to review the charging documents drafted by his subordinates. As noted above, Officer Sisk had probable cause to approve the charges, based on the information provided to him at the time. Therefore, summary judgment is granted as to Officer Sisk.

## IV. Brown's Motion to Bar Expert Testimony

Finally, Brown has moved by separate filing to bar the use of testimony from Defendants' proposed expert, Paul Palumbo, both at summary judgment or at trial (Docket No. 82). Brown has moved to bar on two separate grounds: untimely disclosure of Palumbo, and the relevance and potentially prejudicial effect of Palumbo's testimony. Rulings related to admissibility of evidence fall within the discretion of the trial court. *See, e.g., Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997).

---

[3] As Defendants did not move with respect to Count V against the City of Blue Island for indemnification pursuant to 735 ILCS 10/9-102, this count is not at issue and will proceed to trial. Likewise, while Defendants pleaded qualified immunity as an affirmative defense in their Answer (Docket No. 12), Defendants did not move for summary judgment on grounds of qualified immunity.

As an initial matter, Brown's argument that Palumbo should be barred for untimely disclosure is improper in light of the history of the prosecution of this case. Brown correctly asserts that it is this Court's standing procedure that an expert discovery deadline given in the course of the case is the deadline for *all* expert discovery, including any expert depositions, and that this Court relies upon the professional conduct of the attorneys to set internal deadlines that will allow time for deposition prior to expert discovery closure. However, Brown borders on disingenuous by asserting that expert discovery in this case closed on March 1, 2011 (Docket No. 51). This Court reasonably grants requests for extension; in fact, the parties *did* request accommodation for another witness in this case, which accommodation the Court granted on April 25, 2011, extending fact discovery closure from January 19, 2011 until June 6, 2011 (Docket Nos. 51, 61). Brown had every opportunity to raise objections to Defendants' untimely disclosure of Palumbo at the April 25, 2011 status and to request the right to depose him during the three-month extension of discovery provided by the Court. Instead, Brown delayed in objecting to Palumbo's testimony until the Response to the Motion for Summary Judgment on December 28, 2011, nine months after learning of Palumbo's report. Palumbo was disclosed with plenty of time for a timely objection which Brown failed to do, so the Court will not strike him for untimely disclosure.

Brown also moves to bar Palumbo's testimony as irrelevant, and as usurping the role of the jury as factfinder. Expert testimony is appropriate if "scientific, technical, or other specialized knowledge will assist the trial of fact to understand the evidence or to determine a fact in issue," in which case, "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto and form an opinion." Fed. R. Evid. 702. "An expert who supplies

15

nothing but a bottom line supplies nothing of value to the judicial process." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 2006).

According to his report, Palumbo lists Brown's and the Individual Defendants' depositions as materials upon which he has relied, as well as the Blue Island Use of Force Policy General Order, and the Model Policy on Use of Force. (*See* Palumbo Report, Ex. A to Motion to Bar). Palumbo opines that Officer Navarro's use of force was both consistent with the City of Blue Island Use of Force Policy and objectively reasonable, in light of Brown's movement toward Officer Navarro, pulling away during arrest and tensing his arm. *Id.*

Palumbo's testimony is problematic for two reasons. First, the Seventh Circuit has held that police department general orders regarding the use of force have no bearing on what may be considered "objectively reasonable" under the Fourth Amendment. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (affirming district court ruling that general orders are inadmissible). "Because police rules, practices and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 815-16 (1996)). Second, Palumbo based his conclusion as to objective reasonableness on his opinion of the facts contained in the deposition testimony he was provided. Therefore, in order to reach his final opinion, Palumbo necessarily placed himself into the position of fact-finder, the proper role for the jury. *See Rosen*, 78 F.3d at 319 (use of deposition testimony only in order to form an opinion amounts to an inadmissible bottom-line opinion). Any probative value of Palumbo's testimony is substantially outweighed by the danger of unfair prejudice and jury confusion; permitting the

Defendants to introduce expert testimony based on the same evidence the jury will consider only encourages the jury to substitute Palumbo's opinion for their own. *See Thompson*, 472 F.3d at 458. A jury will have the same opportunity to hear the testimony of Brown, Quincy, and the Individual Defendants as Palumbo had, and will make their own determination as to reasonableness. Brown's Motion to Bar the testimony of Palumbo is granted.

## V. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted as to Officer Sisk as to Counts I and IV (and thereby granted as to all counts against Officer Sisk). Summary Judgment is denied as to Officers Navarro, Murray and Delgadillo on Count I, Officer Navarro on Count II, Officers Murray and Delgadillo on Count III, and Officers Navarro, Murray, and Delgadillo on Count IV. As Defendants did not move with respect to the City of Blue Island, all counts alleged against the City proceed to trial.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 4, 2012